Good morning. I'm Richard Postma. I will be reserving some time for rebuttal. I've walked a long and painful road to get to this point today. It should be evident from the record, and I think it's pretty clear that at this point, you know, I stand before you with my law license intact, but a big reason why I stand here with my law license is because I made public what the Bar Association was trying to do without authority, or excuse me, what two actors with the Bar Association. The purpose for today is to review their denovo, review denovo, their claim for prosecutorial immunity. My purpose here today is to do my best to hold these two state actors liable for their conduct, to make sure that no one else in this state has to go through this, what I would call a slapsuit, and these sorts of civil rights violations. The reason I call it a slapsuit is because if you look at the briefing, and you look at the supplemental, the citations of supplemental authority that came up in the week preceding this oral argument, I think it's pretty clear that the primary purpose of Bangor and Wobler's lawsuit was not to win, but to intimidate, to censor, to silence me as a critic, to burden me with costs in an effort to get me to... What did they do that was not within the prosecutorial privilege? Alright, for example, prosecutors cannot act in violation of a clear limit on their authority. The Bar bylaws provide a clear limit on their authority. If you recall, and if I could back up a little bit, I want to make sure that while we're doing this argument that the Bar Association, they have never made it a part of the record in this case that they speak for the Bar Association. In fact, the Bar Association has made only two statements that are in the record where they state what they believe about this case. One appears in the original application itself, where Bangor is describing the three grounds for interim suspension, and the quote is, none of these conditions exist here. So under the literal terms of Rule 38, the court cannot transfer POSMA to interim disability. Counsel, they did file it on letterhead, right? They filed it on Bar Association's letterhead. Right, okay. So they are purporting in some way to speak for it. If they were representing... And they signed it in their official capacity, and you have alleged that they were acting under color of state law. So if they were not acting on behalf of the Bar Association, but were acting as private citizens, you don't have a 1983 suit at all. Judge, if they're acting... The purpose of a 1983 action is state actors who are acting under the color of state law, the appearance of authority, but not with actual authority. Well, only because they've acted unconstitutionally. But they have otherwise acted... If an officer comes and violates your Fourth Amendment rights and is wearing the uniform, he is purporting to act under color of state law. We only allow the suit because, in fact, he has acted outside the bounds of the Fourth Amendment. Right. But in this case, in order to bring an action, the Bar Association's bylaws are clear. If they're gonna do anything, any attempt to influence a legislative act or an administrative action, and they're gonna do it in the name of the Bar Association, they need the Board of Governors' approval. This is, in some respects... Did you ask the Alaska Supreme Court to dismiss it on that basis? The Alaska Supreme Court didn't dismiss it. The Bar Association dismissed it. That's a supplemental notice that you have here. The Bar Association has ignored the Alaska Supreme Court's order for an examination. They have dismissed Van Goor's complaint, and they've done it under conditions that allow me to continue to file disqualification motions based on bias or prejudice against a handful of judges, all without requiring me to dismiss this civil rights lawsuit. The Supreme Court hasn't had any role in that dismissal. That was an action by... That was an agreement between myself and the Bar Association. Can I ask this? Yes. I thought your best argument for why they should not get absolute immunity here was that they didn't get the approval... Is it of the Bar Liaison? I can't remember the entity that they're supposed to get approval of before they filed the petition against you, right? Yes. So that seemed like your strongest argument, that they actually were not authorized, as our cases seem to suggest they must be in order to get absolute immunity. But then I read, I think it's one of the cases that they submitted as a supplemental authority, this McCarthy case from our court. It's a little bit dated now, it's from 1987, but it seemed quite on point in terms of saying that merely because you don't comply with the formalities of the appointing process, as long as they're acting at least with apparent authority as prosecutors, they're still entitled to absolute immunity. And I guess I'd like to hear your response to their reliance on McCarthy in particular. Alright. I think the difference depends on whether the Bar Association is treated as a grand jury, or whether the highest court in the state of Alaska is treated as a grand jury. Now, if you look at the Bar Association rules, it's the Bar... It's the Board of Governors that's the grand jury. They're the ones that make the preliminary decision about whether there's probable cause to go forward. And they're the ones that authorize a case to go forward, just like a grand jury. If you look at the Lacey case, that's a prosecutor who issued grand jury subpoenas on behalf of the grand jury, but without the grand jury's approval. And then he went to court, and in court he tried to enforce these grand jury subpoenas, and it was at subsequent court proceedings where it was revealed the grand jury had nothing to do with the issuing of these subpoenas. And this court made clear that when a prosecutor bypasses this review process, this review process designed to catch probable cause, they're acting not as an advocate. So in this case, that grand jury process is not the Supreme Court. There is no tradition in this state or any state of prosecutors going to the Supreme Court to get an indictment. Has that ever happened in a criminal case? And not only that... They weren't asking for an indictment. Right, they're not. They're asking for a final action, actually. And that's another difference between an indictment and what bar counts were asking for. They're asking for a final action. The action that you were suing them for was going to the Supreme Court for relief, one of which was refused. That's the basis of your suit, isn't it? Yes, yes. It's a First Amendment violation. As I said, they're trying to silence me or punish me for my First Amendment. But if the statute or regulation authorizes them to apply to the Supreme Court for the kind of relief that the Supreme Court is asking for, is that in their scope? No bar rule allows for this sort of rule, Appellate Rule 404 application. If you look at Appellate Rule 404, that's a general rule that any person, any attorney, can use Appellate Rule 404. In that respect, this is exactly like the Stapley case. Because in Stapley, you had two county attorneys applying a RICO statute against a private citizen, and then a 1983 action comes out of that. And this court held that a RICO statute does not have special authorization that limits it only to government attorneys. Any attorney can bring it. Likewise, any attorney, if I felt I couldn't get relief against the bar, I could file an Appellate Rule 404 petition. So in that respect, this is exactly like the Stapley case. Can I take you back, though, to the Lacey case that you mentioned a little while ago, I guess, to Lacey, with the bar prosecutors, is that their title? Bar counsel. Bar counsel. What the bar counsel would have had to have done is go to the Alaska Supreme Court and misrepresent to the court that they, in fact, had gotten authorization from the Board of Governors. But instead, what they did is they basically just laid their cards on the table, right? So they weren't trying to avoid the judicial phase, which was one of the key components of our holding in Lacey. They actually were explicitly trying to invoke the judicial phase, and they were very candid with the Alaska Supreme Court in saying that we have basically taken a detour around the normal process where we would get Board of Governors authorization, and we're asking you, the court, to do what you think is appropriate. Now, I guess that seems to me a distinction from Lacey that's relevant, but I'd like to hear what you have to say about that. Judge, omissions can be declared or they can be... A misrepresentation can be both declared and it can be an omission. The fact that they didn't go to the Board of Governors to get approval came out after the Supreme Court issued their decision, after it went back to the Bar Association. It occurred during summary judgment proceedings in the federal court. And it was in federal court when I was calling them to task. Remember, they bear the burden of proof to show that they were authorized. I called them to task in the summary judgment motion, and it was then that it was revealed that they hadn't gone to the Board of Governors to get approval to use their letterhead to file a petition with the Supreme Court. Their request to the Supreme Court, I would think it'd be covered by Rule 30B, which provides that hearings will be initiated by the Bar Council, not by any citizen. Judge, if you look at 30B... I am. It explicitly incorporates Bar Rule 22. And Bar Rule 22 is the review and approval process before the Board of Governors or the Board's disciplinary liaison. So there's nothing in Rule 30B that gives them express authority to bypass the Bar Rules or bypass the bylaws. Okay. And that's, I guess, what I was alluding to when I asked the question earlier. Didn't you know when they told the Alaska Supreme Court, hey, we're basically not going to follow the Rule 22 procedures, and they explained their reasons why. Didn't you know at that point that that meant they had never gone to the Board of Governors to get authorization? I was like the plaintiffs in Lacey. When you get something on the Board of Governors letterhead, you assume, I assumed, that here we go. There's been a probable cause review, and now I'm fighting for my life in front of the Supreme Court in a secret proceeding. It's only after... It's just like the Lacey plaintiffs. When they got summoned to court on a contempt notice, that was the point where they discovered that these subpoenas that facially appeared to be grand jury subpoenas actually weren't. I'm sorry, counsel. Can you point out to me in Rule 22 where it requires Bar Council to obtain the permission of the Board of Governors? Okay. Go down through... I don't have my bar rules in front of me, but if you look down into a subsection, I believe it's 22E. Formal proceedings. Formal proceedings. There is a reference to Bar Rule 25D. Okay. And Bar Rule 25D is the review process by the Board of Governors. And the reference there is to this Board Discipline Liaison. That's the person or entity that has to give approval. Is that a stand in for the Board of Governors, basically? The Discipline Liaison is a member of the Board of Governors. Basically, it's the person... It's one person? It's one person. It's the same person that signed the dismissal that is in my notice to supplement the record. And so what they failed to do, Bar Council failed to comply with 25D and have the Board Discipline Liaison approve that? Right. They had... The same process that we used to dismiss the complaint is the same process that's used to initiate the complaint. So your position is that the Alaska Supreme Court itself acted under the misimpression that Bar Council had, in fact, gone through the Board Discipline Liaison? Yes. It's sort of like a fait accompli. They've done something without authorization and then have acted as if it's a completed act before I have a chance to oppose it or this court has a chance to question and review it. Just like this is what happened in the Lacy case. The Lacy plaintiffs... There's no indication that the Lacy plaintiffs thought that the subpoena was anything other than a legitimate grand jury subpoena. It's only when they got to the contempt proceeding that it was discovered during the adversarial process there that the county prosecutor had no authority to begin with to bring... Now remember, part of my functional analysis is, look what happens when you go to the Supreme Court. There's no proceeding, there's no process for an actual trial to call witnesses, to do anything to contest what the bar has done. It's strictly on the pleadings. You're limited to the complaint or the original application and my response to the original application. If you're looking at a functional analysis, I think it's pretty clear that secret proceedings... I've cited a Supreme Court case... Counselor, you're down to one minute. Alright, I wanna reserve my time. Okay. Thank you. Mr. O'Donnell. May it please the court, the conduct at issue here is Mr. Van Gore, Bar Counsel, and Mr. Wolber, Assistant Bar Counsel, filing an original application, a single pleading, with the Alaska Supreme Court. The pleading was served on Mr. Postma, who was given the opportunity to respond. He filed two extensive oppositions. The Alaska Supreme Court granted the motion for a compelled psychological evaluation and denied without prejudice the request for an interim suspension pending this evaluation. At no time did Mr. Van Gore or Mr. Postma attempt to evade, avoid, or sidestep the judicial process. Well, what about... Why don't you respond to your opponent's argument that, in fact, what they did was they misled the Alaska Supreme Court to believe that they had actually gotten the internal authorization that was required before they could even proceed with this action. I think, as you noted previously, there was no misrepresentation, as in Lacey, that this is basically a lawful issued subpoena by a grand jury. This was what the Alaska Supreme Court was told was this was a proceeding that was relying on the Alaska Supreme Court's broad inherent jurisdiction to regulate the practice of law. The issue of whether there were specific formalities internal to the bar that were not followed was never raised by anyone in state court. I just wanna make sure that you're gonna answer Judge Watford's question. But let's just make... Let's just get this clear. Mr. Van Gore did not follow the appropriate bar procedures, is that correct? He didn't follow Rule 25D. No, we would disagree with that. The rule that Mr. Postma is citing is to a situation where a bar to a formal hearing committee comprised of general attorneys of the bar and lay members. And that is for a process where you're gonna go to a hearing committee. The hearing committee then makes a recommendation, it then goes to the bar, the Board of Governors, and then referred on to the Alaska Supreme Court. So did Mr. Van Gore need the Bar Association's approval? Did he need approval from anybody else or can he just file this on his own? Well, the bar rules do not require a formal approval in this circumstance. He was asking for interim relief, which is not under 25D or 30B, which are the provisions that Mr. Postma has been citing. Why isn't this under 30B? That seemed to me to be the applicable rule. And I thought Mr... I don't remember our counsel's names, so I'll keep them straight. But I thought their position before the Alaska Supreme Court was, look, we know that this should normally go under 30B, but the reason we don't wanna do that is because it would require this hearing and we don't want him to have the available procedural opportunities to create havoc. That was their view. And so that's why we're trying to evade... Or not evade, but we're trying to basically come straight to you without going through the normal process. I thought that was their whole position. What they were seeking was an interim remedy. 25D and 30B both deal with a permanent disability or a permanent disbarment order. The interim provisions, 26E and 30A, state that the Alaska Supreme Court, showing by bar counsel, that continuing misconduct creates a threat of irreparable harm, can enter an interim order. There's no requirement under 30A, which is in the disability section, or 26E, which is in the misconduct section, for bar liaison approval. And bar counsel, following the terms of the actual bar rules, did not obtain a formal determination by the Disability Liaison Council... The distinction you're drawing is they only requested interim disability and active status rather than disability and active status. That's correct. Is there a difference between those two? Well, one's interim. And what does that mean? Is that a recognized status in Alaska? Well, it's a distinction made in the bar rules. You can't practice, but it's a temporary determination. It's not a... That phrase, then, actually is used in the rules? Yes, it's an interim action by the court. And there would be reasons for that, rather than going through an extensive formal hearing committee, which makes a report to the Board of Governors, there would be reasons in the rule to have an expedited process where you can bring something immediately to court for judicial review. And obviously, you're taking it to the court with the final extensive and plenary authority direct to supervise the bar. And following up on that concept, I think it's important to note that Mr. Postman is asking for a very large expansion of the limited rule in Lacey v. Maricopa County. And he's asking this court to expand an exception to prosecutors who allegedly sidestep their own organization's internal review procedures, even though all their conduct receives full and complete judicial review. And where in this case, it's actually granted in substantial part. That would be a very large and unwarranted expansion of Lacey, which simply looked at whether counsel had attempted to avoid and evade judicial review. Here, they want to go back and say, well, you didn't follow some internal procedures at the bar, which we never even raised, and we never even litigated in state court. And after we substantially lost before the last Supreme Court, now in federal court, we want to have this whole thing thrown out because we don't think this was accurately documented internally at the bar. And that would be an exponential broadening of the court's holding in Lacey. And of course, Lacey and Stapley involved a host of other really egregious factors. This faux subpoena, asking for all the reporter's notes, all their advertisers' information, who was there that night. They arrested the newspaper owners at night at their home. You have none of that here. You have a filing of one pleading before the last Supreme Court. I was looking at the original application to see where Bar Counsel had invoked Rule 26E, as you had pointed us to, and I just have not seen it. Is there some place in particular that you can point me to? I know it's a little bit of a long document. It wasn't raised. They felt they had the inherent authority to do that. Okay, hold on. So what I asked you, and you never did answer my question, as Judge Pivey sort of suggested. I asked you, it seemed to me that they did recognize that 30B was the appropriate mechanism, and that they explained to the court their reasons for wanting to get around that. I just looked at the original application, and that's all I see. The Bar Counsel actually say, we know normally 30B would be the right way to go, but here are the reasons why we don't want to give him the hearing that that process would require. You said, well, actually, no, they didn't in any way misrepresent or mislead the Alaska Supreme Court to think that they had gotten internal authorization, because they actually didn't need it, because this was a proceeding under Rule 26E, and I'm just not seeing any reference there in this original application that the Bar Counsel were telling the Alaska Supreme Court, hey, we're under 26E, so obviously we didn't need any kind of internal authorization. I think there's two separate issues going on here, and Mr. Postman has kind of conflated them. One is, does the Bar Counsel have, and the test is arguable or colorable authority. It's a very broad definition of authority. But the first question is, did he have the authority? And the second question is, on the merits, what should the court do in a situation where there's a risk of irreparable harm, but under 30B, there isn't a specific category for it as there is in the misconduct section. So on the merits of the case, Bar Counsel was saying, look, this fellow is threatening irreparable harm. It's extremely disruptive. He wants to depose all these judges. He's calling all these judges scurrying cockroaches. We need to step in and try to do something here. But he's saying that the substantive grounds, which are listed in 30B, for example, don't include irreparable harm as they do in 25E, the misconduct section. So the court is just saying, the Bar is saying, exercise your inherent authority to regulate the Bar here. But it's not going to the... They're not talking about the authority to file the original action. Well, let me... Let me give you a hypothetical because I know you resist the factual premise. But let's say that Bar Counsel had misrepresented to the Alaska Supreme Court, that they, in fact, had gotten the internal authorization from the Board of Governors to bring whatever kind of proceeding they were bringing. Do you think that they would still be entitled to absolute immunity in that because this court has never said that if you don't follow your internal authorization procedures within your organization, we're gonna look at that after the fact, after it's never been raised and declare you don't have authority? Well, it's never been raised because nobody knew. They misrepresented. Well, I'll take that out of your answer, my answer. Even if, let's say they didn't have the internal authority, this was not a typical process that would have used the typical form that they used to refer to a hearing committee. Let's say that formal step wasn't done. It's very different than the Lacey exception, which is someone who intentionally, intentionally attempts to avoid and evade judicial review. Here, they receive total judicial review and the application wasn't in substantial part granted. But I mean, I guess I'm resisting that a little bit because I'm imagining... Let's say that I'm an AUSA at the US Attorney's Office and I have to, by internal rule, get the Attorney General's approval before I bring a certain kind of prosecution. And I don't get that approval. I misrepresent to the court and to the rest of the world that I have gotten it and I bring a... I don't know what kind of case it would be, right? But I'm acting completely ultra vires. I have no authority whatsoever to do this precisely because I haven't gotten the proper internal authorization. And you're saying that I'm still entitled, I'd still be entitled to absolute immunity in that circumstance? That just seems a little bit odd to me. Well, I think it's a... It's not a question of the bar saying he didn't have that authority. I mean, it just wasn't raised, it wasn't challenged. And if the bar felt he didn't have it, the Board of Governors would have taken action. You know, we're having something raised long after the fact where it should have been raised in state court. And the question here is, can you go back after the fact and say, because you didn't have some internal authorization and an application was substantially granted, and whether it's a typical prosecutorial function to file this kind of application, that we're gonna find that you've lost your immunity. What are the steps that the Supreme Court would be expected to take under 30B? They went in and they asked for interim removal from practice and reference for a psychological examination. Where does the reference to hearing fit in? What sequence should follow under 30B? They come in and they ask for those things. What would normally happen? There's a reference to a hearing, proceedings under 22, where does that fit in? And is the last sentence, which says the bar counsel for good cause, upon petition of the bar counsel, the court can order a hearing, psychological examination. Is that just totally separate from the rest of the procedure? I would assume it'd be up to the discretion of the last Supreme Court, to the extent that they felt they needed additional hearings before they entered an interim order of suspension. I've seen cases where the last Supreme Court has just issued an order of interim suspension sua sponte in disciplinary matters, so I think they would have broad authority on that issue. Counsel, before you sit down, would you turn to the attorney's fees question and tell me why this is frivolous and where the findings are that support that? Yes, we talked about the last Supreme Court having very broad and inherent authority to supervise the bar. This is a quintessentially prosecutorial function. No one else could have brought this type of claim. I believe the bar had at least colorable authority. That's been interpreted very broadly by the court, including the court for a decision very recently decided where, Judge Wofford, you were on the panel, the Slater v. Clark case. The last Supreme Court actually granted one of the two requests in the original application. Right, that just makes them... That just arguably makes them a prevailing party, and this is not a fee shifting statute that depends on just being a prevailing party. Yes, and I'm referring to the underlying last Supreme Court matter. And I think most importantly, we can tell that there was zero attempt to evade, avoid, or sidestep the judicial procedure. I think the bar counsel, to the extent that they... That doesn't make Mr. Postma's lawsuit here frivolous. It doesn't, except that all those facts are obvious, and filing and suing bar counsel and assistant bar counsel for compensatory and punitive damages, I think was unreasonable in that circumstance because of those obvious facts. Thank you. Thank you, Mr. O'Donnell. Mr. Postma? There's one thing I would like to point out. When they talk about what happened, what is the effect of an interim suspension, the burden of proof shifts. It shifts to the attorney to prove that they should get their license back. And you've got the laundry list of things that bar counsel felt they wanted to prevent me from doing. They had unsworn evidence. They wanted to prevent me from doing discovery into that unsworn evidence. They wanted to prevent me from deposing or cross examining the sources of that unsworn evidence. And they explained why. They were very candid in their explanation as to why they wanted to do that. They were afraid that it would disrupt and just upend the entire judicial system in Alaska. So they have one rule for a Hispanic attorney who complained about discrimination, and another rule for everyone else. That's essentially what they're doing. Well, I didn't see that, but I understand that that's your claim. Right. And judge, if they're gonna... I mean, they made a declarative sentence. The quote is, the Bar Association explained that the limited grounds for interim suspension listed in Bar Rule 30 did not encompass plaintiff's conduct that's in the excerpt of record at 481. So what they're saying is, the rules don't allow it, so ignore the rules and do it anyway, Supreme Court. This is an attempt to change the rules. And the Bar Bylaws specifically prohibit any attempt to change the rules without the Board of Governors... Does the attempt damage it if it didn't happen? Yes, it does, judge. You're not aware, because between the decision by the Federal District Court and the decision by the Bar Council to dismiss this claim, there was an unlawful warrantless search of my billing records that essentially scared away a good portion of my clients. Now, that's not part of the record. This is something that happened... No, it's not part of your suit either, is it? Right. Well, it's part of my... That's part of the effort to intimidate me into giving up a First Amendment activity. You've consumed your time. Thank you very much, Mr. Postman. Thank both counsel for the argument. The case is submitted.
judges: Canby, Bybee, Watford